UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AON ERISA LITIGATION | Master Docket No. 04 C 6875 |
| | Judge Charles R. Norgle |

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT ("*Settlement Agreement*") is entered into by and between the *Named Plaintiffs* in the above-captioned *Action* for themselves and on behalf of the *Class*, on the one hand, and the *Defendants,* on the other hand, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate.

1.  Definitions.

As used in this *Settlement Agreement*, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

   1.1. "*Action*" shall mean In re Aon ERISA Litigation, No. 04 C 6875 (CRN), pending in the United States District Court for the Northern District of Illinois, and any and all cases now or hereafter consolidated therewith.

   1.2. "*Agreement Execution Date*" shall mean the date on which the final signature is affixed to this *Settlement Agreement*.

   1.3. "*Alleged Net Losses*" shall have the meaning set forth in Section 11.1.

   1.4. "*Aon*" shall mean Aon Corporation and each of its predecessors and successors.

   1.5. "*Claims*" shall have the meaning set forth in Section 3.2.

   1.6. "*Class*" shall mean the Class that was certified by the *Court* by Order dated November 29, 2006, as follows: All *Participants* and beneficiaries of the Aon Corporation 401(k) Savings Plan, and any amendments thereto (the "*Plan*"), for whose individual accounts the *Plan* purchased and/or held investments in Aon Corporation common stock, from October 19, 1998 through October 19, 2004. Excluded from the *Class* are *Defendants* and members of Aon's Board of Directors throughout the *Class Period*, including members of their immediate families, their legal representatives, heirs, successors or assigns, and any entity in which any Defendants have or had a controlling interest.

571527

1.7. "*Class Counsel*" shall mean Wolf Haldenstein Adler Freeman & Herz LLP.

1.8. "*Class Notice*" shall mean the form of notice appended as Exhibit A to the form of *Preliminary Approval Order* attached hereto as Exhibit 1.

1.9. "*Class Period*" shall mean October 19, 1998 through and including October 19, 2004.

1.10. "*Class Settlement Amount*" shall have the meaning set forth in Section 7.1.2.

1.11. "*Company*" shall mean Aon Corporation and any of its past, present, and future directors, officers, fiduciaries, employees, partners, principals, agents, members, independent contractors, registered representatives, underwriters, insurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, personal representatives, predecessors, successors, successors-in-interest, parents, subsidiaries, divisions, assigns, administrators, associates, and related or affiliated entities.

1.12. "*Complaint*" shall collectively mean the Consolidated Amended Class Action Complaint filed in the *Action* on or about August 22, 2005 and any predecessor complaint filed by plaintiffs.

1.13. "*Court*" shall mean the United States District Court for the Northern District of Illinois.

1.14. *Defendant Releasees* shall mean: (i) the *Defendants* and any other defendant previously named in the Action; (ii) any *Person* who served as an attorney, advisor, trustee, sponsor, or named or functional fiduciary of the *Plan*; (iii) any predecessors, successors-in-interest, direct or indirect parents and subsidiaries, affiliates, partners, insurers, and any *Person* that controls, is controlled by, or is under common control with any of the foregoing; and (iv) any present and former *Representatives* of any of the foregoing.

1.15. "*Defendants*" collectively refers to the defendants to the *Complaint*, irrespective of whether each defendant is identified by name in the *Complaint*. Defendants includes: (i) the *Company*; (ii) the individuals named in the *Complaint*, including David Bolger, Daniel T. Corroll, Franklin A. Cole, Michael A. Conway, Nancy Gross, Robert Hurwitz, Edgar D. Jannotta, Jan Kalff, Lester B. Knight, Michael Losh, Michael O'Halleran, Perry J. Lewis, R. Eden Martin, Andrew J. McKenna, Newton N. Minow, Robert S. Morrison, Richard Notebaert, Donald S. Perkins, John Reschke, John W. Rogers, Jr., Patrick G. Ryan, Gloria Santona, George A. Schaefer, Raymond I. Skilling, Thomas Stachura, Fred L. Turner, Arnold R. Weber, Elizabeth Whittle, and Carolyn Y. Woo, and (iii) any other member of Aon Corporation's Board of Directors, the *Plan's* Investment Committee, and the *Plan's* Administrative Committee during the *Class Period*.

1.16. "*Defendants' Counsel*" shall mean Sidley Austin LLP.

1.17. "*ERISA*" shall mean the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.18. "*Escrow Agent*" shall mean the firm of Wolf Haldenstein Adler Freeman & Herz LLP.

1.19. "*Fairness Hearing*" shall have the meaning set forth in Section 2.1.3.

1.20. "*Final*" shall mean: with respect to any judicial ruling or order, that the period for any appeals or petitions for certiorari ("*Appeal Proceeding*") has expired without the initiation of an *Appeal Proceeding*, or, if an *Appeal Proceeding* has been timely initiated, that there has occurred a full and final disposition of any such *Appeal Proceeding* without a reversal or any material modification, including the exhaustion of proceedings in any remand and/or subsequent appeal after remand. Notwithstanding any other provision hereof, the *Final Order* shall be deemed *Final* at the time set forth in the preceding sentence even if, at that time, (i) the *Court* has not yet entered an order regarding the *Plan of Allocation* or the award of legal fees and expenses or an award of compensation to the *Named Plaintiffs*, (ii) an order regarding the *Plan of Allocation* or the award of legal fees and expenses or an award of compensation to the *Named Plaintiffs* has been entered but has not yet become *Final*, or (iii) an order regarding the *Plan of Allocation* or the award of legal fees and expenses or an award of compensation to *Named Plaintiffs* has been entered but is modified following an *Appeal Proceeding*.

1.21. "*Final Order*" shall have the meaning set forth in Sections 2.1.3 and 2.2 and shall be in the form attached hereto as Exhibit 2.

1.22. "*Financial Institution*" shall have the meaning set forth in Section 7.1.1.

1.23. "*Independent Fiduciary*" shall mean a fiduciary of the *Plan* whose function is described in Section 2.4.

1.24. "*Named Plaintiffs*" shall mean Mary A. Brewton, James P. Fagan, Yassin Hamwi, Sheryl Kahn-Freedman, James T. Kayfes, Jr., Alan Lubeck, Gil McDonald, Julie Urban, and Monica Young-Freeman.

1.25. "*Non-Monetary Settlement Consideration*" shall mean the benefits conferred on the *Class* through the efforts of *Class Counsel*, as set forth in Section 8.

1.26. "*Net Proceeds*" shall have the meaning set forth in Section 11.1.

1.27. "*Participant(s)*" shall mean any individual(s) who was a *participant,* as the term *participant* is defined in 29 U.S.C. § 1002(7), in the *Plan* at any time during the *Class Period.*

1.28. "*Parties*" shall mean the *Plaintiffs* and the *Defendants*.

1.29. "*Person*" shall mean an individual, partnership, corporation, estate, trust, governmental entity or any other form of entity or organization.

1.30. "*Plaintiffs*" shall collectively refer to the *Plan*, the *Named Plaintiffs* and each member of the *Class* (at times referred to as "*Class Members*.")

1.31. "*Plaintiff Releasees*" shall have the meaning set forth in Section 3.3.

571527

1.32. *"Plan"* shall mean the Aon Corporation 401(k) Savings Plan, all predecessor and successor plans and any trust created under the forgoing plans.

1.33. *"Plan of Allocation"* shall mean the plan of allocation approved by the *Court* as contemplated by Section 11.1 and be in the form attached hereto as Exhibit 3.

1.34. *"Preliminary Approval Order"* shall have the meaning set forth in Section 2.1.1 and be in the form attached hereto as Exhibit 1.

1.35. *"Preliminary Approval Motion"* shall have the meaning set forth in Section 2.1.1.

1.36. *"Released Claims"* shall have the meaning set forth in Section 3.2.

1.37. *"Releases"* shall mean the releases set forth in Section 3.

1.38. *"Representatives"* shall mean current or former representatives, including current or former attorneys, agents, directors, officers, insurers, trustees, heirs, executors, advisors, or employees.

1.39. *"Settlement"* shall mean the settlement to be consummated under this *Settlement Agreement* pursuant to the *Final Order*.

1.40. *"Settlement Agreement"* shall mean this Class Action Settlement Agreement.

1.41. *"Settlement Fund"* shall have the meaning set forth and described in Section 7.1.

1.42 *"Signers"* shall have the meaning set forth and described in Section 7.1.1.

2. <u>Conditions to Finality of the *Settlement*</u>.

This *Settlement* shall be final when each of the following conditions in Sections 2.1 through 2.4 have been satisfied or waived.

2.1. *Court* <u>Approval</u>. The *Settlement* shall have been approved by the *Court*, as provided for in this Section 2. *Class Counsel* shall move the *Court* for an order and judgment approving this *Settlement Agreement* and the *Settlement* contemplated hereunder. The *Plaintiffs* shall recommend to the *Court* that such order and judgment be entered, the *Defendants* will not object to such recommendation, and the *Parties* shall cooperate in good faith, which shall include all steps and efforts contemplated by this *Settlement Agreement*, all steps or efforts reasonably necessary to secure preliminary and final approval by the *Court* of the *Settlement,* and any other steps or efforts which may become necessary by order of the *Court* (unless such order materially modifies the terms of this *Settlement Agreement*), to carry out this *Settlement Agreement*, including the following:

2.1.1. <u>Motion for Preliminary Approval of *Settlement*</u>. As soon as reasonably possible upon the full execution of this *Settlement Agreement* by the *Parties*, the *Plaintiffs* will file a motion ("*Preliminary Approval Motion*") with the *Court* for an order (the "*Preliminary Approval Order*") substantially in the form annexed hereto as Exhibit l.

2.1.2. <u>Issuance of *Class Notice*</u>. On the date and in the manner set by the *Court* in its *Preliminary Approval Order*, the *Plaintiffs* shall cause the *Class Notice* to be transmitted in the form and manner approved by the *Court* as directed in the *Preliminary Approval Order*.

2.1.3. <u>The *Fairness Hearing*</u>. Upon entry of the *Preliminary Approval Order*, the *Parties* contemplate that the *Court* will schedule and then conduct a hearing at which the *Court* will determine whether the *Settlement* is fair, reasonable, and adequate (the "*Fairness Hearing*"). Specifically, the *Plaintiffs* will request that the *Court* determine on or after the date of the *Fairness Hearing*: (i) whether to enter judgment finally approving the *Settlement* and dismissing with prejudice the *Action* (which judgment is referred to herein as the "*Final Order*"); (ii) whether the distribution of the *Settlement Fund* as provided in the *Plan of Allocation* should be approved; and (iii) what legal fees, compensation and expenses should be awarded to *Class Counsel,* and to *Named Plaintiffs*, as contemplated by Section 12 of this *Settlement Agreement.*

2.2. <u>Finality of *Final Order*</u>. The *Court* shall have entered the Order and Final Judgment substantially in the form attached hereto as Exhibit 2, as more fully discussed in Section 2.1.3 (the "*Final Order*") and the *Final Order* shall have become *Final*, as provided in Section 1.20.

2.3. <u>Funding of *Class Settlement Amount*</u>. Aon Corporation shall have caused the *Class Settlement Amount* to be deposited at the time prescribed by, and otherwise as provided for, in Section 7.1.

2.4. <u>*Settlement* Authorized by *Independent Fiduciary*</u>. The *Plaintiff*s do not require the *Company* to obtain approval of the *Settlement* by an independent fiduciary. Nevertheless, subject to the *Company's* unilateral right to waive this contingency, the *Settlement* is contingent upon an *Independent Fiduciary*, at least seven (7) days prior to the *Fairness Hearing* (or upon another date agreeable to the *Defendants*) (i) approving the *Settlement* and authorizing a release in its capacity as an independent fiduciary of the *Plan* and for and on behalf of the *Plan* that is coextensive with the release from the *Class*, and (ii) authorizing the *Settlement* in accordance with Prohibited Transaction Class Exemption 2003-39, and (iii) finding that the *Settlement* does not constitute a prohibited transaction under *ERISA* § 406(a). The *Company* shall determine whether it requires any or all of (i), (ii) or (iii). The *Company* will move promptly to seek to obtain this approval, authorization or finding and will bear all costs associated with seeking such approval, authorization or finding. If the *Company* waives this condition, then the *Settlement* shall become *Final* if all other relevant conditions in the *Settlement Agreement* are satisfied or waived.

3. *Releases*.

    3.1. *Releases* of the *Defendant Releasees*. Subject to Section 13 herein, effective upon the entry of the *Final Order* by the *Court* and regardless of whether the *Final Order* has become *Final*, *Plaintiffs* on behalf of themselves and on behalf of the *Plan* absolutely and unconditionally release and forever discharge the *Defendant Releasees* from *Released Claims* that *Plaintiffs* directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have relating to the *Class Period*, except that the release under this Section 3.1 shall not include claims relating to the covenants or obligations set forth in this *Settlement Agreement*. Notwithstanding any other provision hereof, the *Releases* set forth in Sections 3.1, 3.2, and 3.3 of this *Settlement Agreement* will remain in effect during the pendency of any *Appeal Proceeding*. Only if any *Appeal Proceeding* results in a reversal or vacation of the *Final Order* will the *Releases* set forth in Sections 3.1, 3.2, and 3.3 of this *Settlement Agreement* become void and lose their effect.

    3.2. *Released Claims*. The *Released Claims* shall be: any and all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief), whether accrued or not, whether against the *Defendant Releasees* in their capacity as individuals or in their capacities as *Plan* fiduciaries, whether already acquired or acquired in the future, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise (collectively, *"Claims"*) which were or could have been asserted in the *Complaint* by or on behalf of *Plaintiffs* concerning the matters alleged in the *Complaint* or referenced in the litigation, or any other matters that could have been alleged in the *Complaint*, including but not limited to any *Claims* (i) related to any action or inaction relating to *Company* stock held in the *Plan;* (ii) related to Aon Corporation's public or financial disclosures; (iii) that purport to arise under ERISA, the federal securities laws, or any other law or statute; and (iv) that would be barred by principles of *res judicata* or collateral estoppel had the *Claims* asserted in the *Complaint* been fully litigated and resulted in a *Final* judgment or order. In the event that any court with original or appellate jurisdiction over this *Action* issues a *Final* determination that any portion of this Section is not enforceable, the *Parties* may (but shall not be required to) jointly agree in writing to modify this Section to conform with such determination.

    3.3. The *Parties* understand and agree that the *Releases* to be given pursuant to this *Settlement Agreement* shall include *Released Claims* that are not known or suspected to exist at the time such *Releases* are given, and *Plaintiffs* explicitly acknowledge and waive any and all rights they may have under statutory provisions that protect unknown future claims, including, without limitation, the claims discussed in Section 3.5. The *Parties* understand and agree, however, that the *Releases* to be given pursuant to this *Settlement Agreement* shall not include the right of the *Plaintiffs* or the *Plan* to participate in any recovery in the action entitled *Roth v. Aon Corporation, et al.*, No. 04c6835 (CRN) (N.D. Ill.).

    3.4. *Defendants' Releases* of *Named Plaintiffs*, the *Class* and *Class Counsel*. Subject to Section 13 herein, effective upon the entry of the *Final Order* by the *Court* and regardless of whether the *Final Order* has become *Final*, the *Defendants* absolutely and unconditionally release and forever discharge the *Named Plaintiffs*, the *Class* and *Class Counsel* (collectively,

571527

the "*Plaintiff Releasees*") from any and all *Claims* relating to the institution or prosecution of the *Action* or the settlement of any *Released Claims*, except that the release under this Section 3.3 shall not include *Claims* relating to the covenants or obligations set forth in this *Settlement Agreement* or the Confidentiality Stipulation and Protective Order.

    3.5.   <u>Scope of *Releases*</u>.

    3.5.1. The *Releases* set forth in this Section 3 are not intended to include the release of any rights or duties arising out of this *Settlement Agreement*, including the express warranties and covenants in this *Settlement Agreement*.

    3.5.2. The *Parties* intend and agree that the *Releases* granted in this Article 3 shall be effective as a bar to any and all currently unsuspected, unknown, or partially known Claims within the scope of their express terms and provisions. Accordingly, the *Plaintiffs* hereby expressly waive, on their own behalf and on behalf of the *Plan*, and the *Defendants* hereby expressly waive, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common laws of any other State, Territory, or other jurisdiction. Section 1542 reads in pertinent part:

> A general release does not extend to claims that the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

    3.5.3. The *Plaintiffs* and the *Defendants* each hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction was separately bargained for and that neither the *Plaintiffs*, on the one hand, nor the *Defendants*, on the other, would enter into this *Settlement Agreement* unless it included a release of all of the *Released Claims*, including the unknown *Claims*, relating to the *Class Period*. The *Plaintiffs* and the *Defendants* each expressly agree that all release provisions in this *Settlement Agreement* shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected, and future *Claims*, demands, and causes of action. The *Plaintiffs* and *Defendants* assume for themselves, the risk of his, her or its respective subsequent discovery of understanding of any matter, fact, or law, that if now known or understood, would in any respect have affected his, her, or its entering into this *Settlement Agreement*.

4.   <u>*Covenants*</u>.

The *Parties* covenant and agree as follows:

    4.1.   <u>Covenants Not to Sue</u>.

    4.1.1. The *Plaintiffs* covenant and agree: (i) not to file against any *Defendant Releasee* or the *Plan* any additional *Claim* based on, relating to, or arising from any

7

*Released Claim*, or refile any *Claim* brought in this *Action*; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such *Claims* against any of the respective *Defendant Releasees*.

        4.1.2. The *Defendants* covenant and agree (i) not to file against any *Plaintiff Releasee* or the *Plan* any *Claim* released under Section 3.4; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such *Claims* against any of the respective *Plaintiff Releasees.*

    4.2.    <u>Taxation of *Settlement Fund*</u>. *Plaintiffs* acknowledge that the *Defendant Releasees* have no responsibility for any taxes due on the *Settlement Fund*, on earnings from the *Settlement Fund*, or on any amounts that the *Plaintiffs* or *Class Counsel* receive from the *Settlement Fund*. Nothing herein shall constitute an admission or representation that any such taxes will or will not be due. The amounts paid to *Class Members* allocated pursuant to the *Plan of Allocation* will be treated as restorative payments consistent with Revenue Ruling 2002-45, 2002-2 C.B 116, 2002 WL 137852.

    4.3.    <u>Cooperation</u>. The *Parties* shall cooperate in good faith, including by taking all steps and efforts contemplated by this *Settlement Agreement* and all steps reasonably necessary to secure preliminary and final approval by the *Court* of the *Settlement* as set forth above in Sections 2.1 and 2.2.

        4.3.1. After entry of the *Preliminary Approval Order*, upon written request by *Class Counsel*, Defendants shall, within thirty (30) business days, use its best efforts to provide *Class Counsel* with the names and last known addresses of members of the *Class* and timely respond to reasonable written requests for accessible data in the *Company's* custody necessary to implement, enforce or determine the feasibility of a proposed *Plan of Allocation*. No charge against the *Settlement Fund* shall be made by the *Defendants*, directly or indirectly, for the gathering or the provision of such information. The *Parties* acknowledge that any information provided by the *Defendants* to *Class Counsel* shall be treated as confidential pursuant to the Confidentiality Stipulation and Protective Order, provided that the *Parties* expressly acknowledge that the information may be used solely to deliver the *Class Notice* and/or implement the *Settlement*, including the *Plan of Allocation*. *Plaintiffs* will share with the *Defendants* any information they gather about *Persons* to whom the *Class Notice* is to be sent, whether developed from the information provided by the *Defendants* as discussed in this Section or otherwise.

    4.4.    <u>Request by the *Court* or the *Named Plaintiffs* for Information</u>. If the *Court* deems it necessary for the *Parties* to supply any information as part of the *Court's* review of the *Settlement Agreement*, the *Parties* will reasonably expedite provision of such information as directed by the *Court*. If it is necessary for the *Defendants* to supply information in order to respond to any timely filed objection, the *Defendants* will reasonably expedite provision of such information. Any disputes regarding requests for information by the *Parties* shall be decided by the *Court*.

5. <u>Representations and Warranties</u>.

    5.1. <u>*Parties'* Representations and Warranties</u>. The *Parties*, and each of them, represent and warrant as follows, and each *Party* acknowledges that each other *Party* is relying on these representations and warranties in entering into this *Settlement Agreement:*

        5.1.1. That *Plaintiffs* have conducted discovery and have diligently litigated this case pursuant to the *Court's* orders;

        5.1.2. That the *Parties* are voluntarily entering into this *Settlement Agreement* as a result of arm's-length negotiations among their counsel; that in executing this *Settlement Agreement* they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and *Claims* hereunder and regarding all matters which relate in any way to the subject matter hereof. Each *Party* assumes the risk of mistake as to facts or law.

        5.1.3. That the *Parties* have carefully read the contents of this *Settlement Agreement*, and this *Settlement Agreement* is signed freely by each *Person* executing this *Settlement Agreement* on behalf of each of the *Parties*. The *Parties*, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the *Settlement*, this *Settlement Agreement*, and all of the matters pertaining thereto, as he, she, or it deems necessary.

    5.2. <u>Signatories' Representations and Warranties</u>. Each *Person* executing this *Settlement Agreement* on behalf of any other *Person* does hereby personally represent and warrant that he or she has the authority to execute this *Settlement Agreement* on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

6. <u>No Admission of Liability</u>.

The *Parties* understand and agree that this *Settlement Agreement* embodies a compromise settlement of disputed claims, and that nothing in this *Settlement Agreement,* including the furnishing of consideration for this *Settlement Agreement,* shall be deemed to constitute any finding of fiduciary status under *ERISA* or wrongdoing by any of the *Defendants,* or give rise to any inference of fiduciary status under *ERISA* or wrongdoing or admission of wrongdoing or liability in this or any other proceeding. This *Settlement Agreement* and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual.

Moreover, the *Defendants* specifically deny any such liability or wrongdoing and state that they are entering into this *Settlement Agreement* to eliminate the burden and expense of further litigation. Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding (i) to enforce this *Settlement Agreement* or arising out of or relating to the *Final Order* or (ii) where the *Releases* provided pursuant to this *Settlement Agreement* may serve as a bar to recovery.

7. The *Settlement Fund* and Deliveries into the *Settlement Fund*.

   7.1. The *Settlement Fund*.

      7.1.1. Within five (5) business days after entry of the *Preliminary Approval Order*, the *Escrow Agent* shall establish at a financial institution (the "*Financial Institution*") a settlement fund account (the "*Settlement Fund*"). *Class Counsel* shall promptly notify the other *Parties* of the date of the establishment of the *Settlement Fund*. The monies in the *Settlement Fund* shall be considered a common fund created as a result of the *Action*, with *Net Proceeds* as described in Sections 10 and 11 to be paid into the *Plan* and distributed among *Class Members* according to the *Plan of Allocation*. All funds held by the *Escrow Agent* in the *Settlement Fund* pursuant to this *Settlement Agreement* shall be deemed and considered to be in the legal custody of the *Court* until such time as such funds shall be distributed pursuant to further order(s) of the *Court* or pursuant to the terms of this *Settlement*. *Class Counsel* shall designate at least one person with signature authority over the *Settlement Fund* (the "*Signers*"), and shall direct the *Financial Institution* to make distributions from the *Settlement Fund* only in accordance with this *Settlement Agreement* upon written direction from each *Signer*. The *Signers* shall not authorize any distributions except as permitted under this Agreement or as otherwise authorized by the Court.

      7.1.2. In consideration of, and expressly in exchange for, all of the agreements set forth in this *Settlement Agreement*, within ten (10) business days after notification of the establishment of the *Settlement Fund* (or upon an alternate date agreed upon by the *Parties*), the *Defendants* and/or their insurers shall cause the *Escrow Agent* to be paid the aggregate sum of $1,800,000.00 (the "*Class Settlement Amount*"), to be deposited in the *Settlement Fund*.

      7.1.3. Except as provided herein, the *Settlement Fund* shall bear interest and shall be invested only in United States Treasury securities and/or securities of United States agencies backed by the full faith and credit of the United States Treasury, and mutual funds or money market accounts that invest exclusively in the foregoing securities.

      7.1.4. The *Settlement Fund* shall be structured and managed to qualify as a qualified settlement fund under Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder. The *Settlement Fund* will pay any federal, state, and local taxes that may apply to the income of the *Settlement Fund*.

     The *Escrow Agent* shall arrange for the preparation and filing of all tax reports and tax returns required to be filed by the *Settlement Fund* and for the payment from the *Settlement Fund* of any taxes owed. The *Escrow Agent* shall be authorized to retain a certified public accounting firm for those purposes. All taxes on the income of the *Settlement Fund* and tax-related expenses incurred in connection with the taxation of the *Settlement Fund* shall be paid solely out of the *Settlement Fund*, shall be considered a cost of administration of the *Settlement*, and shall be timely paid without further order of the *Court*. All fees and expenses of the *Financial Institution*, and of professional advisors engaged by the *Financial Institution* in connection with the *Settlement Fund*, shall be

funded solely from the *Settlement Fund* and shall be paid without further order of the *Court*.

      7.1.5. The *Parties* acknowledge and agree that the *Defendant Releasees* shall have no authority, control, or liability in connection with the design, management, administration, investment, maintenance, or control of the *Settlement Fund*, or for any expenses the *Settlement Fund* may incur or for any taxes that may be payable by the *Settlement Fund*.

7.2.    <u>Sole Monetary Contribution</u>. The *Class Settlement Amount* shall be the full and sole monetary contribution made by or on behalf of the *Defendants* in connection with the *Settlement* effected between the *Plaintiffs* and the *Defendants* under this *Settlement Agreement*, except costs incurred in connection with *Class Notice* and in connection in the administration of the *Settlement*, which shall be borne by *Defendants* as set forth below in Sections 9 and 11.2. The *Class Settlement Amount* specifically covers any claims for costs and attorneys' fees by the *Plaintiffs*, on their behalf or on behalf of the *Class*, as well as any compensation awards to *Named Plaintiffs*. Except as otherwise specified in this *Settlement Agreement*, the *Parties* shall bear their own costs and expenses (including attorneys' fees) in connection with effectuating the *Settlement* and securing all necessary *Court* orders and approvals with respect to the same.

8.    <u>Non-Monetary *Settlement* Consideration</u>.

8.1.    The Settlement shall be conditioned on the following non-monetary consideration provided by *Defendants* in addition to the monetary consideration set forth in Section 7.2.

      8.1.1. <u>Independent Investment Advisor</u>. The *Company* agrees to continue to retain for a period of at least five (5) years from the date the *Final Order* is entered by the *Court* an independent advisor or an independent third-party fiduciary to advise the *Plan* fiduciaries regarding the *Plan's* investment in *Company* stock.

      8.1.2. <u>No Restriction on Sale of *Company* Stock</u>. The *Company* agrees to take no action, for a period of at least five (5) years from the date that the *Final Order* is entered by the *Court*, to restrict the *Participants'* ability to sell *Company* stock in the *Plan*.

      8.1.3. <u>Plan Amendments</u>. The *Company* agrees to cause the Plan's fiduciary structure to continue to be identified in future Plan documents and Summary Plan Descriptions ("SPDs"), such that the individuals or entities who exercise fiduciary responsibility over the Plan's assets and the Aon Common Stock ESOP in the Plan are identifiable. Thus, starting with the Plan's 2010 SPD, the *Company* agrees to include the following language in the Plan's SPD, subject to the *Company*'s right to change such language in the future in the event of changes to the Plan's design, changes to the Plan's committee or reporting structure, or for purposes of clarity or accuracy:

> The Aon Retirement Plan Governance and Investment Committee (RPGIC) is responsible for selecting and monitoring the Plan's investment options, with the exception of the Aon Common Stock ESOP. The Board of Directors appoints RPGIC members. The *Company* has retained State

Street Bank and Trust Company (State Street) as the Investment Manager for the Aon Common Stock ESOP. The terms of the Plan require that the Aon Common Stock ESOP be offered as an investment option. However, in the event that State Street, as Investment Manager for the Aon Common Stock ESOP, determines that the continued investment in Aon stock is not consistent with ERISA, it may take steps to liquidate or otherwise dispose of all or some of the Aon stock in the Aon Common Stock ESOP.

8.1.4. Participant Education. In conjunction with the Plan's recordkeeper, the *Company* agrees to provide or continue to make available to Plan Participants educational/advisory resources for at least 5 years from the date that the Final Order is entered by the Court. The *Company* currently offers the following educational/advisory resources through ING Institutional Plan Services, LLC ("ING"), the Plan's current recordkeeper. (In the event the *Company* changes Plan recordkeepers during this time period, the *Company* will continue to provide any substantially equivalent educational/advisory resources that are available through the new recordkeeper.) Through the ING Advisor Service, Plan participants currently have access to (1) online investment advice (through the use of retirement planning software powered by Financial Engines), (2) access to professional account management for a fee, and (3) investor educational materials. Information about the ING Advisor Service was sent to Plan participants and is mailed to all new eligible employees. In addition, information about the ING Advisor Service is available at http:\\www.aon401kingplans.com.

9. Costs of *Class Notice*. *Defendants* shall be responsible for all costs incurred in connection with *Class Notice*.

10. Disbursements from the *Settlement Fund*.

*Class Counsel* may direct the *Financial Institution* to disburse from the *Settlement Fund* as follows:

10.1. For Attorneys' Fees and Expenses. As provided in Section 12 herein. A proposed form of order for attorneys' fees, expenses, and *Named Plaintiffs*' compensation awards is attached hereto as Exhibit 3.

10.2. For the *Named Plaintiffs*' Compensation. As provided in Section 12 herein.

10.3. For taxes and expenses of the *Settlement Fund*. As provided in Section 7.1.4 herein.

11. Effectuating the *Plan of Allocation*.

11.1. *Plaintiffs* shall propose to the *Court* a *Plan of Allocation* in substantial conformity to the one attached hereto as Exhibit 4 that shall provide for the calculation, allocation, and distribution of the *Settlement Fund* net of the disbursements called for in Section 10 ("*Net Proceeds*"). The amount paid to *Class Members* under the *Plan of Allocation* shall be referred to as the "Settlement Payment." Generally, the *Plan of Allocation* will allocate the *Net Proceeds* among the *Class* in proportion to their alleged losses ("*Alleged Net Losses*"), as directed by the

*Court*, and shall not require the *Company* or the *Plan* to distribute to *Class Members* what is deemed to be a *de minimis* amount pursuant to the *Plan of Allocation*. In addition, *Class Members* who cannot be located through reasonable effort will be excluded from the *Plan of Allocation* and will not receive a Settlement Payment. If revisions to the *Plan of Allocation* are necessary, *Class Counsel* shall be responsible for presenting the revised *Plan of Allocation* to the *Court*. The *Plan of Allocation* is a matter separate and apart from the *Settlement* between the *Parties,* and no decision by the *Court* concerning the *Plan of Allocation* shall affect the validity of the *Settlement Agreement* or finality of the *Settlement* in any manner. Nothing herein shall constitute approval or disapproval of the *Plan of Allocation* by the *Defendant Releasees*. *Defendants* reserve their rights to challenge any *Plan of Allocation* submitted to the *Court* if it is not in substantial conformity to Exhibit 4 hereto. *Defendants* will in good faith, however, at the request of *Class Counsel* and without charge, consult with and provide *Class Counsel* with information related to any *Plan of Allocation* being considered by *Class Counsel*. No decision by a court that modifies the formula proscribed in the *Plan of Allocation* shall affect the validity of the *Settlement Agreement* or the finality of the *Settlement*.

11.2. *Defendants* shall pay, without further order of the Court, all fees and/or expenses incurred in connection with distribution of the *Settlement Fund* pursuant to the *Plan of Allocation*, including fees and expenses incurred by the *Plan* trustee or any third party vendor used for calculation, allocation, or distribution of funds pursuant to the *Plan of Allocation*.

12. <u>Attorneys' Fees and Expenses and Compensation to *Named Plaintiffs*</u>.

12.1. <u>Payment of Attorneys' Fees</u>. As provided in Section 2.1.3, and pursuant to the common fund doctrine and/or any applicable statutory fee provision, *Class Counsel* may apply to the *Court* for an award of attorneys' fees in an amount not exceeding 15% of the amount in the *Settlement Fund*. *Class Counsel* shall be entitled to receive such attorneys' fees from the *Settlement Fund* to the extent awarded by the *Court* and agrees not to seek from the *Court* an award of attorneys' fees in excess of this amount. *Defendants* shall not oppose *Class Counsel*'s application for attorneys' fees.

12.2. <u>Payment of Expenses</u>. As provided in Section 2.1.3, *Class Counsel* may apply to the *Court* for expenses incurred in connection with this *Action* in an amount, which amount shall not exceed $800,000. *Class Counsel* shall be entitled to receive an award of such expenses from the *Settlement Fund* to the extent ordered by the *Court* and agree not to seek from the *Court* an award of expenses in excess of this amount. *Defendants* shall not oppose *Class Counsel's* application for expenses.

12.3. <u>Payment of Compensation Award</u>. As provided in Section 2.1.3, *Class Counsel* may apply to the *Court* for compensation to *Named Plaintiffs* as consideration for their time and effort devoted to the prosecution of the *Action* in an amount of up to $5,000 each. *Named Plaintiffs* shall be entitled to receive an award of such expenses from the *Settlement Fund* to the extent ordered by the *Court* and agrees not to seek from the *Court* an award of expenses in excess of this amount. *Defendants* shall not oppose the application for compensation awards to *Named Plaintiffs*.

12.4. <u>Disbursement of Attorneys' Fees, Expenses and Compensation to *Named*</u>

571527

*Plaintiffs*. After the *Court*'s execution of the *Final Order*, subsequent to the entry of an order allowing the payment of attorneys' fees and expenses from the *Settlement Fund*, and/or an order allowing the payment of *Named Plaintiff* compensation from the *Settlement Fund*, the *Escrow Agent* may instruct the *Financial Institution* in writing to disburse the payments from the *Settlement Fund*, which the *Financial Institution* shall do within five (5) business days of receiving such direction, subject to *Class Counsel* providing an appropriate and mutually agreeable letter of credit to *Defendants' Counsel*, and subject to *Class Counsel's* joint and several obligation to make appropriate refunds or repayments to the *Settlement Fund* plus accrued interest at the same net rate as is earned by the *Settlement Fund*, if and when, as a result of any successful collateral attack, the fee or cost award is reduced or reversed. If at the time of any disbursement from the *Settlement Fund* pursuant to Section 10 hereof there shall be a pending application for attorney's fees or expenses or *Named Plaintiff* compensation, there shall be reserved in the *Settlement Fund* an amount equal to the amount of the pending application, until such time as the *Court* shall rule upon such application.

13. <u>Termination of the Settlement Agreement</u>.

    13.1. <u>Termination</u>. This *Settlement Agreement* may be terminated if (i) the *Court* declines to enter the *Final Order*, or (ii) the *Final Order* entered by the *Court* is reversed or modified in any material respect on appeal, provided that the terminating party, within fourteen (14) days from the date of such event, furnishes written notice to *Class Counsel* or *Defendants' Counsel,* as the case may be, of the termination of this *Settlement*, specifying the terms modified or not approved that give rise to the right to terminate.

    13.2. <u>Consequences of Termination of the *Settlement Agreement*</u>. If the *Settlement Agreement* is terminated, the following shall occur:

        13.2.1. *Class Counsel* and *Defendants' Counsel* shall within five (5) business days after the date of termination of the *Settlement Agreement* jointly notify the *Financial Institution* in writing to return within five (5) business days to Aon Corporation the amount contributed by it to the *Settlement Fund,* with all net income earned thereon, after deduction of the amount disbursed or incurred for any necessary taxes and expenses set forth in Section 7.1.4. Prior to the return of amounts contemplated by this Section 13.2.1, the *Financial Institution* shall fully and finally fulfill any tax obligations of the *Settlement Fund* as set forth in Section 7.1.4.

        13.2.2. The *Action* shall for all purposes revert to its status as of the day immediately before the *Agreement Execution Date*, and the *Parties* shall request a scheduling conference with the *Court*. The *Parties* also agree that when requesting an amended schedule from the Court, no party will contend that the other has failed to comply, or otherwise seek to take advantage of a party's not complying, with dates in the Amended Scheduling Order. The terms of this *Settlement Agreement* shall not constitute nor be construed as an admission by any *Party*, nor be used against any *Party*, whether as evidence or argument. The *Parties* specifically agree that *Defendants* will not be deemed to have consented to class certification and will retain all rights to continue to object to class certification, and *Plaintiffs* will not contend that *Defendants* have made any

concession with respect to class certification, or otherwise cite to this *Settlement Agreement* in support of class certification.

   13.2.3. All provisions of this *Settlement Agreement* shall be null and void except as otherwise provided herein.

14. <u>Miscellaneous Provisions</u>.

 14.1. <u>Communications Regarding this *Settlement Agreement*</u>. The Parties shall agree on the language of any press release announcing or relating to the *Settlement Agreement*.

 14.2. <u>Governing Law</u>. This *Settlement Agreement* shall be governed by the laws of Illinois without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

 14.3. <u>Destruction of Materials</u>. Within thirty (30) days after the *Final Order* becomes *Final*, the Parties shall fully comply with the applicable provisions of the Confidentiality Stipulation and Protective Order concerning the destruction of materials.

 14.4. <u>Amendment</u>. Before entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Parties*. Following entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed on behalf of all *Parties* and approved by the *Court*. Amendments or modifications may be made without notice to the *Class* unless notice is required by law or the *Court*.

 14.5. <u>Waiver</u>. The provisions of this *Settlement Agreement* may be waived only by an instrument in writing executed by the waiving party. The waiver by any party of any breach of this *Settlement Agreement* shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this *Settlement Agreement*.

 14.6. <u>Construction</u>. None of the *Parties* hereto shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

 14.7. <u>Principles of Interpretation</u>. The following principles of interpretation apply to this *Settlement Agreement:*

   14.7.1. <u>Headings</u>. The headings of this *Settlement Agreement* are for reference purposes only and do not affect in any way the meaning or interpretation of this *Settlement Agreement*.

   14.7.2. <u>Singular and Plural</u>. Definitions apply to the singular and plural forms of each term defined.

14.7.3. <u>Gender</u>.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

14.7.4. <u>Terms of Inclusion</u>.  Whenever the words "include," "includes," or "including" are used in this *Settlement Agreement,* they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.8. <u>Further Assurances</u>.  Each of the *Parties* agrees, without further consideration, and as part of finalizing the *Settlement* hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this *Settlement Agreement*.

14.9. <u>Notices</u>.  Any notice, demand, or other communication under this *Settlement Agreement* (other than the *Class Notice*, or other notices given at the direction of the *Court*) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

<u>IF TO PLAINTIFFS:</u>

Wolf Haldenstein Adler Freeman &
   Herz LLP
Attn:  Scott J. Farrrell, Esq.
270 Madison Avenue
New York, NY 10016
Telephone (212) 545-4600

<u>IF TO DEFENDANTS</u>:

Sidley Austin LLP
Attn:  Erin Kelly, Esq.
One South Dearborn Street
Chicago, IL  60603
Telephone (312) 853-7000

The *Plaintiffs* and the *Defendants* may change the address at which they are to receive notice by written notice delivered to each other in the manner described above.

14.10. <u>Entire Agreement</u>.  This *Settlement Agreement* contains the entire agreement between the *Parties* relating to this *Settlement*.

14.11. <u>Counterparts</u>.  This *Settlement Agreement* may be executed by exchange of faxed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this *Settlement Agreement* shall be deemed an original signature for purposes of this *Settlement Agreement*. This *Settlement Agreement* may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and

the same instrument.

      14.12.  Binding Effect.  This *Settlement Agreement* binds and inures to the benefit of the *Parties* and their assigns, heirs, administrators, executors, and successors.

      14.13.  Jurisdiction.  The *Court* shall have jurisdiction over the *Parties* and the claims asserted in the litigation as stated in the *Final Order*.

      IN WITNESS WHEREOF, the *Parties* have executed this *Settlement Agreement* on the dates set forth below.

Dated:  April 8, 2010

**FOR THE PLAINTIFFS:**

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC


/s/  Adam J. Levitt
Adam J. Levitt
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
(312) 984-0000 (t)
levitt@whafh.com

Michael Jaffe
Scott J. Farrell
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York  10016
(212) 545-4600 (t)
jaffe@whafh.com
farrell@whafh.com

*Plaintiffs' Class Counsel*

571527

**FOR THE DEFENDANTS**

SIDLEY AUSTIN LLP

/s/  David F. Graham
David F. Graham
James W. Ducayet
Erin E. Kelly
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000 (t)
dgraham@sidley.com
jducayet@sidley.com
ekelly@sidley.com