# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **IN RE AON ERISA LITIGATION** | **Master Docket No. 04 C 6875** |
| | **Judge Charles R. Norgle** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT; AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION

Adam J. Levitt
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
(312) 984-0000 (t)
(312) 984-0001 (f)

Michael Jaffe
Scott J. Farrell
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
(212) 545-4600 (t)
(212) 545-4563 (f)

*Plaintiffs' Class Counsel*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ......................................................................................iii

I.  PRELIMINARY STATEMENT .......................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND......................................... 2

    A.  The Complaint ......................................................................................... 3

    B.  Class Certification................................................................................... 4

    C.  Discovery Efforts of Class Counsel........................................................ 4

    D.  The Settlement ........................................................................................ 5

III. THE NOTICE TO CLASS MEMBERS, AS ORDERED BY THE COURT, SATISFIED RULE 23 AND DUE PROCESS REQUIREMENTS ................................. 6

IV. ARGUMENT....................................................................................................... 7

    A.  The Standards for Settlement Approval.................................................. 7

    B.  The Settlement Meets the Standards for Judicial Approval.................... 8

        1.  Balancing the Strength of Plaintiffs' Case Against the Terms of the Settlement ........................................................... 8

            a.  Risks of Establishing Liability........................................ 9

            b.  Risks of Establishing Damages..................................... 11

            c.  Recent Case Law Underscores the Significant Risks In This Case ................................................................. 13

            d.  Measured Against the Significant Risks, the Settlement Consideration Is Reasonable......................................... 14

        2.  The Complexity, Expense, and Likely Duration of This Litigation All Weigh in Favor of Settlement .................................... 15

        3.  The Lack of Objections Further Supports the Proposed Settlement......... 16

        4.  The Opinion of Competent Counsel Weighs In Favor of Approving the Settlement ................................................................... 17

        5.  Settlement at This Stage of the Proceedings Is In the Best Interest of the Settlement Class............................................................. 17

V.      THE PLAN OF ALLOCATION IS REASONABLE AND
        SHOULD BE APPROVED ............................................................................................ 18

VI.     CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Alvidres v. Countrywide Financial Corp.,*
  07-CV-05810, 2008 WL 819330 (C.D. Cal. Mar. 18, 2008)......................................10

*Armstrong v. Board of School Directors,*
  616 F.2d 305 (7th Cir. 1980) ..............................................................................8

*Brieger v. Tellabs, Inc.,*
  629 F. Supp. 2d 848 (N.D. Ill. 2009) ..................................................................13

*Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.),*
  494 F.2d 799 (3d Cir. 1974).................................................................................14

*In re Cardinal Health ERISA Litigation,*
  424 F. Supp. 2d 1002 (S.D. Ohio 2006) ..............................................................10

*In re Charter Communications, Inc. Securities Litigation,*
  No. 02-cv-1186, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) ..............18

*In re Citigroup ERISA Litigation,*
  No. 07-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009)....................................10

*Clarion v. American Home Products Corp.,*
  494 F.2d 860 (7th Cir. 1974), *cert. denied,* 419 U.S. 870 (1974)................................16

*Cohn v. Nelson,*
  375 F. Supp. 2d 844 (E.D. Mo. 2005)...................................................................16

*In re Computron Software Inc., Securities Litigation,*
  6 F. Supp. 2d 313 (D.N.J. 1998) ..........................................................................16

*County of Suffolk v. Long Island Lighting Co.,*
  907 F.2d 1295 (2d Cir. 1990)...............................................................................17

*DeFelice v. U.S. Airways, Inc.,*
  436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd,* 497 F.3d 410 (4th Cir. 2007)...............13

*Desert Orchid Partners L.L.C. v. Transaction Systems Architects, Inc.,*
  No. 02-553, 2007 U.S. Dist. LEXIS 15547 (D. Neb. Mar. 2, 2007) .........................15

*Donovan v. Bierwirth,*
  754 F.2d 1049 (2d Cir. 1985)...............................................................................11

*Dura Pharmaceuticals, Inc. v. Broudo,*
  544 U.S. 336 (2005)............................................................................................12

*Edgar v. Avaya, Inc.,*
  503 F.3d 340 (3d Cir. 2007)...............................................................................9

*EEOC v. Hiram Walker & Sons, Inc.,*
  768 F.2d 884 (7th Cir. 1985) ........................................................................7, 15

*In re Ford Motor Co. ERISA Litigation,*
  590 F. Supp. 2d 883 (E.D. Mich. 2008) ...........................................................10

*Gearren v. McGraw-Hill Companies, Inc.,*
  690 F. Supp. 2d 254 (S.D.N.Y. 2010)...............................................................10

*George v. Kraft Foods Global, Inc.,*
  684 F. Supp. 2d 992 (N.D. Ill. 2010) ................................................................13

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975)...............................................................................17

*In re Global Crossing Securities & ERISA Litigation,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................15, 19

*In re GMC Pick-up Truck Fuel Tank Products Liability Litigation,*
  55 F.3d 768 (3d Cir. 1995).................................................................................17

*Great Neck Capital Appreciation Investment
Partnership, LLP v. PricewaterhouseCoopers, LLP,*
  212 F.R.D. 400 (E.D. Wis. 2002) .......................................................................8

*In re IKON Office Solutions, Inc. Securities Litigation,*
  209 F.R.D. 94 (E.D. Pa. 2002)...........................................................................16

*Isby v. Bayh,*
  75 F.3d 1191 (7th Cir. 1996) ....................................................................7, 8, 17

*Johnson v. Board of Education Champaign
Community Unit School District No. 4,*
  Case No. 00-cv-1349, 2009 U.S. Dist. LEXIS 102742 (C.D. Ill. Nov. 4, 2009).........................7

*Kuper v. Iovenko,*
  66 F.3d 1447 (6th Cir. 1995) ..............................................................................9

*Lingis v. Motorola, Inc.,*
  649 F. Supp. 2d 861 (N.D. Ill. 2009) .................................................................13

iv

*Mangone v. First USA Bank,*
206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................6

*Mars Steel Corp. v. Continental Illinois National Bank & Trust Co.,*
834 F.2d 677 (7th Cir. 1987) ...............................................................................8

*In re Mexico Money Transfer Litigation,*
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...............................................................17

*Meyenburg v. Exxon Mobil Corp.,*
Case No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 97057 (S.D. Ill. June 5, 2006)................17

*Moench v. Robertson,*
62 F.2d 553 (3d Cir. 1995)...................................................................................9

*In re NASDAQ Market-Makers Antitrust Litigation,*
MDL No. 1023, 94-3996, 2000 U.S. Dist. LEXIS 304 (S.D.N.Y. Jan. 12, 2000) ...................19

*In re Painewebber Ltd. Partnerships Litigation,*
171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................18

*Retsky Family Limited Partnership v. Price Waterhouse LLP,*
Case No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001)......................17, 18

*Robbins v. Koger Properties, Inc.,*
116 F.3d 1441 (11th Cir. 1997) .........................................................................14

*Rogers v. Baxter International, Inc.,*
No. 04 C 6476, 2010 U.S. Dist. LEXIS 43586 (N.D. Ill. May 3, 2010)....................................13

*Rubenstein v. Republic National Life Insurance Co.,*
74 F.R.D. 337 (N.D. Tex. 1976) .........................................................................16

*Sutton v. Bernard,*
446 F. Supp. 2d 814 (N.D. Ill. 2006),
*vacated and remanded on other grounds by,* 504 F.3d 688 (7th Cir. 2007)..............................18

*White v. NFL,*
822 F. Supp. 1389 (D. Minn. 1993) ...................................................................18

*In re Wireless Telephone Federal Cost Recovery Fees Litigation,*
MDL 1559, Master Case No. 4:03-md-01559,
U.S. Dist. LEXIS 23342 (W.D. Mo. 2004)...........................................................15

## STATUTES & RULES

Employee Retirement Income Security Act ("ERISA").......................................................... *passim*
    § 404..............................................................................................................................9
    § 404(c) ....................................................................................................................10, 11

Federal Rules of Civil Procedure
    Rule 12(b)(6).................................................................................................................3
    Rule 23 ..........................................................................................................................6
    Rule 23(b) ......................................................................................................................4
    Rule 23(c)(2)..................................................................................................................6
    Rule 23(e)......................................................................................................................6
    Rule 23(e)(2)..................................................................................................................7

## OTHER AUTHORITIES

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.161[1] (3d ed. 2006).........................7

# I.     PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs[1] submit this memorandum of law in support of their motion for final approval of the Settlement of this litigation (the "Settlement") for $1.8 million in cash, as well as various non-monetary benefits, and for approval of the Plan of Allocation of the Settlement proceeds. The terms of the Settlement are set forth in the Class Action Settlement Agreement, dated April 8, 2010 (the "Settlement Agreement").

As set forth in the Levitt Declaration[2] submitted herewith, this case has been vigorously litigated for over five years. At every stage of the litigation, Defendants[3] have asserted aggressive defenses and expressed their belief that Plaintiffs could not prevail on the claims asserted. Prior to reaching the Settlement, Class Counsel[4] (a) successfully opposed Defendants' motion to dismiss; (b) obtained certification of a Class over Defendants' strong opposition; (c) reviewed and analyzed millions of pages of documents produced by Defendants and

---

[1]  As defined in the Class Action Settlement Agreement (Docket No. 262), "Plaintiffs" refers to the nine named plaintiffs in the Action who were appointed as class representatives of the Class under Fed. R. Civ. P. 23.

[2]  "Levitt Declaration" or "Levitt Decl." refers to the Declaration of Adam J. Levitt in Support of (1) Final Approval of Settlement of the Proposed Class Action Settlement; (2) Final Approval of the Proposed Plan of Allocation; (3) an Award of Attorneys' Fees and Expenses; and (4) Compensation Awards to the Named Plaintiffs. Plaintiffs respectfully refer the Court to that Declaration for a more detailed history of this litigation, the efforts of counsel, and the factors bearing on the reasonableness of the Settlement and Plan of Allocation.

[3]  "Defendants," as used herein, refers to Aon Corporation ("Aon" or the "Company"), and certain directors and officers of Aon, as well as members of the Investment Committee of the Plan. *See* Levitt Decl. fn.2.

[4]  As defined in the Settlement Agreement, "Class Counsel" refers to Wolf Haldenstein Adler Freeman & Herz ("Wolf Haldenstein"), which was appointed by the Court as Class Counsel by Order dated November 29, 2006. As use herein, Class Counsel also refers at times to other Counsel for Plaintiffs who have assisted in this Action.

numerous third-parties; (d) conducted and/or participated in numerous witness depositions; and (e) completed expert discovery involving five testifying experts.

In reaching the Settlement, Class Counsel considered the numerous risks raised by the arguments Defendants made throughout the Action. Even though Class Counsel believe that the claims asserted have substantial merit, the Action involved complex legal and factual issues as well as extraordinary risks with respect to issues of both liability and damages. Based on these extraordinary risks, Class Counsel have concluded that the Settlement is a fair and reasonable result for the Class.

Notice of the Settlement and the Plan of Allocation has been provided to Class members, in accordance with the Court's Preliminary Approval Order, dated April 16, 2010. (Docket No. 265.) As of the date of this submission, *no* member of the Class has objected to the Settlement, and the deadline for objecting to the Settlement has passed, thus strongly supporting approval.[5]

For all of the reasons discussed herein and in the Levitt Declaration, Class Counsel respectfully submit that the Settlement is fair, reasonable, and adequate to the Class and should be approved by the Court. Moreover, Class Counsel further respectfully submit that the Plan of Allocation of the Settlement proceeds is also fair, reasonable, and adequate, and should be approved the Court.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

The Levitt Declaration sets forth the factual and procedural background of this case, the efforts of Class Counsel in prosecuting this Action to a successful negotiated conclusion, the

---

[5]     Pursuant to ¶ 2.4 of the Settlement Agreement, an independent fiduciary has also reviewed the Settlement. The independent fiduciary has raised no objection to the Settlement in any respect. (*See* Levitt Decl. fn.10.)

Settlement terms and the Plan of Allocation for distribution of the cash component of the Settlement to Class members.  Class Counsel summarize that discussion below.

A.     **The Complaint**

In late October 2004, following an extensive investigation, counsel for Plaintiffs filed complaints on behalf several current and former participants of the Aon Corporation 401(k) Savings Plan (the "Plan").  On August 22, 2005, after extensive additional factual and legal analysis, Plaintiffs filed an Amended Complaint (the "Complaint"), further detailing their claims.

In sum, the Complaint alleges that Defendants breached their fiduciary duties to the Plan and its participants under the Employee Retirement Income Security Act ("ERISA"), by allowing the Plan to offer, purchase and hold a fund consisting almost exclusively of Aon ("Aon Stock") at a time when that stock was an unsuitable and imprudent investment for the Plan, and by failing to make required disclosures to Plan participants concerning the Company and Aon Stock.  Specifically, the Complaint alleges that Defendants permitted the Plan to invest in Aon Stock while Aon was engaging in a fraudulent scheme that allowed Aon to generate hundreds of millions of dollars in revenue from undisclosed agreements with insurance companies, which required those companies to make "contingent commission" payments to Aon based on the volume of the business that Aon "steered" to the insurer.  The Complaint alleges that when the practices were fully disclosed on October 19, 2004, the last day of the Class Period, Aon's common stock price had fallen more than 30%, resulting in losses of tens of millions of dollars to the Plan and its participants.

On October 11, 2005, Defendants filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  After full briefing of the motion by the parties, the Court denied Defendants' motion to dismiss in its entirety, by Order dated April 12, 2006.  *See* Levitt Decl. ¶¶ 12-14.

**B.**    **Class Certification**

By Order dated November 29, 2006, a Class was certified under Fed. R. Civ. P. 23(b)(1) and (b), with the nine named Plaintiffs appointed as Class representatives and Wolf Haldenstein appointed as Class Counsel.  The certified Class was defined as: All persons who were participants in or beneficiaries of the Aon Corporation 401(k) Savings Plan from October 19, 1998 through October 19, 2004, inclusive (the "Class Period"), and whose accounts included investments in Aon Stock.  The starting date of the Class Period was, as Plaintiffs advised the Court, subject to later modification based on subsequent merits discovery.  *See* Levitt Decl. ¶¶ 16-19, 46.

**C.**    **Discovery Efforts of Class Counsel**

Merits discovery began in late 2005, and over the course of the next two years Defendants produced more than two million pages of documents on a rolling basis, including the deposition transcripts in other litigations; documents Defendants previously produced to government agencies and in other litigations; the minutes of regular and special meetings of Aon's Board of Directors, its Audit Committee of the Board of Directors, its Investment Committee of the Board, and its Compensation Committee of the Board of Directors; internal communications relating to Aon Stock in the Plan; and internal communications among Company officials relating to the investigation conducted by the New York Attorney General.  In addition, Class Counsel subpoenaed thousands of pages of documents from third parties, propounded numerous Interrogatories and Requests to Admit (the responses to which furthered the development and framing of the case) and engaged in extensive expert discovery involving five experts.  Class Counsel took 26 depositions of witnesses, and took or defended the depositions of the five experts. *See* Levitt Decl. ¶¶ 20-35.

D.     **The Settlement**

After extensive negotiation of the various issues and extensive analysis of the merits of the claims and the quantum of damages, Class Counsel agreed in principle to the proposed Settlement.  Over the next several months, Class Counsel negotiated the remaining provisions of the Settlement and exchanged drafts of settlement documents.  Those efforts resulted in the execution of the Settlement Agreement, dated April 8, 2010, which provides $1.8 million to the Class.  In addition, the Settlement provides for various non-monetary benefits, as described in an expert report attached to the Levitt Declaration as Exhibit 1.  In sum, Defendants have agreed to continue to allow, for at least 5 years, the Plan participants' current unrestricted freedom to sell Aon Stock in the Plan.[6]  *Id. at pp. 5-6.*  Moreover, Defendants have agreed to identify the fiduciary structure of the Plan significantly more transparent in future SPDs.  *Id.* at pp. 6-7.  In addition, pursuant to the Settlement, an independent fiduciary, whose role it is to determine whether investment in Aon Stock is consistent with ERISA, will remain in place in the Plan for at least 5 more years.  *Id.* at p. 5.  Finally, pursuant to the Settlement, Defendants will be obligated to continue the practice of providing Plan participants with access to specific educational services relating to retirement.  *Id.* at pp. 7-8.

The Settlement also requires Defendants to bear all costs relating to the work of an independent fiduciary in assessing the Settlement, as well as all costs relating to Notice to the Class and the administration and distribution of the Settlement Fund pursuant to the Plan of Allocation.  *See* Levitt Decl. ¶¶ 36-43.

---

[6]  Over $31 million in Aon Stock was transferred to other Plan investment options in 2009.  *See* Levitt Declaration, Exhibit 1 at pp. 5-6.  Of this amount, Class Counsel has recently learned that approximately $12 million originated from Company "matching contributions," which is the component of company stock in a retirement plan that is often subject to restrictions on sale.

By Order dated April 16, 2010, the Court preliminarily approved the Settlement and directed that Notice of the Settlement in the form proposed by the parties be sent to all potential Class members and published in summary form in *USA Today*. *See* Levitt Decl. ¶ 38.

### III. THE NOTICE TO CLASS MEMBERS, AS ORDERED BY THE COURT, SATISFIED RULE 23 AND DUE PROCESS REQUIREMENTS

As discussed in the Levitt Declaration, pursuant to the Court's Preliminary Approval Order, a Class Notice was disseminated to the Class that fairly and adequately described the terms of the Settlement and effect of the Settlement Agreement; the time and place of the Final Hearing, the proposed Plan of Allocation; Class Counsel's intention to seek attorneys' fees up to 15% of the $1.8 million cash component of the Settlement Amount and reimbursement of litigation expenses up to $800,000; Class Counsel's intention to seek awards to the nine named Plaintiffs in an amount of up to $5,000 each; contact information for Class Counsel; and the procedures for objecting to any aspect of the Settlement. *Id.* ¶¶ 49-50. In addition, a summary of the Notice was published in *USA Today*, advising Class members of the Settlement in general terms and directed them to the full Class Notice. *See id.* In addition, the Class Notice was published on Class Counsel's website. *Id.* ¶ 49.

A notice satisfies Fed. R. Civ. P. 23(c)(2), 23(e) and due process if it: (1) describes the essential terms of the settlement; (2) discloses any special benefits or incentives to the class representatives; (3) provides information regarding attorneys' fees; (4) indicates the time and place of the hearing to consider approval of the settlement, and the method for objection to and/or opting out of the settlement; (5) explains the procedures for allocating and distributing settlement funds; and (6) prominently displays the address of class counsel and the procedure for making inquiries. *Mangone v. First USA Bank*, 206 F.R.D. 222, 232 (S.D. Ill. 2001) (quoting Manual For Complex Litigation Third, ¶ 30.212 (3d ed. 1995)); s*ee also Airline Stewards and*

*Stewardesses Ass'n 550 v. American Airlines*, 455 F.2d 101, 108 (7th Cir. 1972) (notice satisfied due process where it, *inter alia*, provided summary of proceedings to date, and notified class of the significance of judicial approval of settlement and the opportunity to object at the hearing).

The notice program in this case fairly apprises Class members of the Settlement and their options with respect thereto, and fully satisfies all due process requirements.

## IV.    ARGUMENT

### A.    The Standards for Settlement Approval

Under Fed. R. Civ. P. 23(e)(2), the settlement of a class action requires a determination by the Court that the proposed settlement is "fair, reasonable, and adequate." *See also Johnson v. Bd. of Educ. Champaign Cmty. Unit Sch. Dist. No. 4*, Case No. 00-cv-1349, 2009 U.S. Dist. LEXIS 102742, at *9 (C.D. Ill. Nov. 4, 2009). In assessing the fairness of a class action settlement, courts should be mindful of the long-standing policy favoring settlements of civil actions, particularly class actions. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (citing, *inter alia*, *Metrop. Hous. Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cit. 1980)). As one commentator has noted:

> The fact that courts must review and approve proposed settlements or voluntary dismissals [] does not mean that those steps are disfavored in class actions. *To the contrary, there is a strong judicial policy in favor of settlements of class actions.* Settlement of class actions conserves judicial resources by avoiding further litigation. The parties to a settlement also avoid the costs and risks of a lengthy and complex trial.

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.161[1] (3d ed. 2006) (emphasis added; footnotes omitted).

In addition, courts should hesitate to substitute their own judgment for the judgment of the litigants and their counsel. As the Seventh Circuit has said:

> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

*Armstrong v. Bd. Of Sch. Directors*, 616 F.2d 305, 315 (7th Cir. 1980). *See also Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987). Accordingly, a "strong presumption of fairness attaches to a settlement agreement when it is the result of. [arm's-length] negotiation." *Great Neck Capital Appreciation Inv. P'ship, L.L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). Moreover, a settlement must be viewed in its entirety and in the light most favorable to the settlement. *Armstrong*, 616 F.2d at 315.

The Seventh Circuit has identified the following five factors that a district court should consider to determine whether a settlement is fair, reasonable and adequate: (1) the strength of the plaintiffs' case compared to the amount of the defendants' settlement offer; (2) an assessment of the likely complexity, length and expense of the litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Isby*, 75 F.3d at 1199. As explained below and in the Levitt Declaration, when examined under these criteria, the Settlement is a fair and reasonable result for the Class and should be approved.

## B. The Settlement Meets the Standards for Judicial Approval

### 1. Balancing the Strength of Plaintiffs' Case Against the Terms of the Settlement

Risk is inherent in any litigation, particularly a class action. The risk is even more acute in an ERISA class action based on the theory that company stock is imprudently invested in a retirement plan, which is a complex and rapidly developing area of law.

### a.    Risks of Establishing Liability

Plaintiffs' prevailing theory in this case is that the Defendants, as fiduciaries of the Plan, acted imprudently under ERISA § 404 by permitting and encouraging Plan investment in Aon Stock while that stock grew more volatile and risky during the Class Period.  While Plaintiffs believed that they had marshaled evidence that could support their claims, establishing liability was fraught with serious and extraordinary risks.

Had the Settlement not been reached and this case adjudicated on the merits, Defendants would have argued, as they made clear in expert reports and other submissions, that judgment should be entered in their favor because Aon Stock appeared to be a prudent and viable retirement investment throughout the Class Period.  Specifically, Defendants would have argued that the contingent commission practices at issue were common in the insurance industry and known to the public, and in any event represented only a small fraction of Aon's bottom line. *See* Levitt Decl. ¶ 56.   They also would have argued that retirement plans are long term investments, and that Aon Stock significantly rebounded shortly after the end the Class Period. *Id.*   In making these arguments, Defendants would possibly benefit from a "presumption of prudence" to the extent that it was determined that the inclusion of Aon Stock was mandated by the terms of the Plan.  *See Edgar v. Avaya, Inc*., 503 F.3d 340 (3d Cir. 2007); *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995).  *See also Kuper v. Iovenko*, 66 F.3d 1447, 1459-60 (6th Cir. 1995) (affirming summary judgment and holding that inside knowledge of a company's financial troubles coupled with an 80% drop in stock price was not enough to override the *Moench* presumption of prudence).

Moreover, this case has taken on increased risk since it was filed due to evolving case law concerning the definition of "imprudence" under ERISA.  One court has even held that plan fiduciaries are immune from judicial inquiry in connection with a plan's investment in company

9

stock if the terms of the plan mandated that investment option. *See In re Citigroup ERISA Litig.*, No. 07-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) (currently on appeal). Other courts have recently held that only a showing that a company faced a near collapse supports a finding of imprudence in connection with company stock in a retirement plan. *See, e.g., Gearren v. McGraw-Hill Cos., Inc.*, 690 F. Supp. 2d 254 (S.D.N.Y. 2010). Plaintiffs would have argued that a near collapse of a company is not necessary to demonstrate imprudence under ERISA. *See, e.g., Alvidres v. Countrywide Fin. Corp.*, 07-CV-05810, 2008 WL 819330, at *3 (C.D. Cal. Mar. 18, 2008) (holding allegations of serious mismanagement as well as stock fluctuation sufficient to demonstrate imprudence); *In re Ford Motor Co. Erisa Litig*, 590 F. Supp. 2d 883, 909 (E.D. Mich. 2008) (holding that there are many ways to demonstrate imprudence, including showing that the stock "has become excessively risky as a result of massive mismanagement"); *In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d 1002, 1033 (S.D. Ohio 2006) (holding that an ERISA fiduciary could be found imprudent where fiduciaries "knew, or had reason to know that [the company] faced troubles that were certain to cause a decline in the value of its stock"). However, the possibility that the Court would require a showing akin to a near collapse of a company, or that the Seventh Circuit would apply such a standard after an appeal, increased the risk of proving liability in this case.

In addition, Defendants would have asserted certain affirmative defenses that, if successful, would have countered or minimized any liability, including the following: (1) the fiduciaries were strictly adhering to the Plan requirement that Aon Stock be an investment alternative in the Plan; (2) the fiduciaries are insulated by ERISA § 404(c) from liability arising from a participant's own investment decisions; and (3) the sale of any large amount of Aon Stock would have only further exacerbated any decline and may have also constituted "insider trading"

10

in violation of the federal securities laws.  Plaintiffs believe they could have defeated these arguments.  For instance, Plaintiffs would argue that fiduciaries need not follow Plan documents if doing so would be imprudent; that the ERISA 404(c) defense does not apply because participants lacked sufficient information to control their Aon Stock investments; and that ERISA violations are not protected by the "insider trading" argument does not override ERISA duties.  However, Defendants' various defenses to liability presented additional considerable risks in establishing liability.

### b.      Risks of Establishing Damages

Even if Plaintiffs were successful in establishing liability, significant risks still remained in proving damages.

*First*, Plaintiffs' view is that the measure of damages in an ERISA case is the difference between what the retirement plan lost (or gained) on the stock in question compared with what the plan would have earned on a more prudent investment.  S*ee Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985).  However, in order to recover any significant damages, Plaintiffs recognized that the damages would be severely limited if the comparison to an alternative investment did not end when the Class Period ends (*i.e.*, October 19, 2004 or soon thereafter), because Aon stock rebounded soon after that time.  Had the case proceeded to trial, Defendants would have argued that even if the *Donovan* alternative measure is applied, there were ***no damages at all*** because the comparison to an alternative should not end at the end of the Class Period, and Aon's stock price had a higher return relative to other alternative investments if the measurement were extended beyond the end of the Class Period.  *See* Levitt Decl. ¶¶ 31, 57, 59.

*Second*, Defendants would argue that even if full liability were shown, damages are limited to only ***new*** purchases of Aon Stock made after the beginning of the Class Period, rather

than all Aon Stock in the Plan.[7]  If the Court were to accept Defendants' theory, the maximum

damages to the Plan (even assuming a complete victory on liability as to all claims in the case)

would only be a fraction of the loss to the Plan that was calculated by Plaintiffs' expert.  *See*

Levitt Decl. ¶¶ 30-31, 59.

      *Third*, Defendants would argue that the fiduciaries could not have liquidated Aon Stock

in the Plan without simultaneously releasing information to the market and thereby causing its

immediate decline.  *See* Levitt Decl. ¶ 57.  While Plaintiffs would have argued that the full

divestment of Aon Stock could have been accomplished through an orderly and legal process

without materially affecting its price, the outcome of this argument is far from certain.  If the

Court were to adopt Defendants' position, damages would be severely curtailed or eliminated.

      *Fourth*, a significant issue in this case is *when* liability begins.  After the completion of

discovery, Plaintiffs' theory of liability and their expert's consequent damage calculation was

predicated on wrongdoing beginning as of May 5, 2003.  *See* Levitt Decl. ¶ 46.  However, if

liability was only shown to begin as of a later date, damages would be reduced accordingly.[8]

---

[7]  With no ERISA case directly on point, the Court might find support from the securities law area, in
which damages must be limited to losses that were causally related to fraud.  *Dura Pharm, Inc., v.
Broudo*, 544 U.S. 336 (2005).  In this regard, while Plaintiffs would argue that the entire loss to the Plan
was due to imprudence, Defendants would argue that, at most, only the loss due to *new* investment in the
Plan during the Class Period is linked to any imprudence.

[8]  Damages in this case would also likely be reduced by the settlement of the related *Roth* securities
action.  After the *Roth* settlement was reached in May 2009, Class Counsel strenuously argued with
counsel for the *Roth* defendants that the claims in this ERISA case could not be released by submission of
proofs of claim in the *Roth* case by the Plan or its participants.  While the ERISA claims of the Plan and
its participants are preserved in the *Roth* Settlement, an offset was still implemented, as required by law,
whereby any damages in this ERISA case would be offset by the amount distributed to the Plan and/or its
participants under the damage formula in the *Roth* case.  The relevant provision in the *Roth* settlement
reads:

    The Released Claims shall not include the ERISA claims asserted in pending action
    entitled *In re Aon ERISA Litigation*, Master Docket No. 04 C 6875 (N.D. Ill.), on behalf
    of the Aon Savings Plan or members of the certified class of Plan participants, but the
    aggregated monetary recovery through a judgment (other than a judgment entered in
(footnote continued . . .)

c. __Recent Case Law Underscores the Significant Risks In This Case__

Since this case was filed, several courts in this district have granted summary judgment to defendants in ERISA cases. *See, e.g.*, *Rogers v. Baxter Int'l, Inc.*, No. 04 C 6476, 2010 U.S. Dist. LEXIS 43586 (N.D. Ill. May 3, 2010) (defendants' motion for summary judgment granted in ERISA company stock drop case); *George v. Kraft Foods Global, Inc.*, 684 F. Supp. 2d 992 (N.D. Ill. 2010) (same); *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861 (N.D. Ill. 2009) (same). While each of these cases obviously involved a different set of facts, these summary judgment decisions substantially raised the level of risk in this case.

Moreover, if this case had survived summary judgment, to Plaintiffs knowledge it would have been only the third ERISA "stock drop" case to go to trial, and the two known company stock drop cases decided at trial have resulted in verdicts for the defendants. In *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006) *aff'd*, 497 F.3d 410 (4th Cir. 2007), the trial court found (after a six-day bench trial) that the fiduciaries of a plan did not breach their fiduciary duties under ERISA by allowing company stock to remain as an investment option in the plan despite a highly precarious financial condition of the company that soon led to its bankruptcy. *See id.* at 436 F. Supp. 2d at 784-88. In *Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848 (N.D. Ill. 2009), the trial court found that the plaintiffs had failed to establish, *inter alia*, that plan fiduciaries were procedurally or substantively imprudent with respect to maintaining Tellabs stock in a retirement plan where the plaintiffs had alleged that the stock had been artificially inflated. The Court held, among other things, that: (1) knowledge that company stock

---

(… footnote continued)

connection with a settlement) in the ERISA litigation, if any, shall be reduced by the portion of the Settlement Fund that is ultimately distributed, respectively, to the Plan or Plan participants with respect to purchaser's made through the Plan, together with any pro rata costs and attorneys' fees paid from the Settlement Fund that the Court rules to be appropriate. (*See* Docket No. 194 in the *Roth* action at ¶ 1.22.)

was the plan's riskiest investment coupled with defendants' intimate knowledge of Tellabs' business was sufficient to satisfy procedural prudence -- even in the absence of any discussions regarding removing company stock from the plan; and (2) company stock was substantively prudent where defendants' internal research showed that the telecommunications industry would rebound and there was never any real threat of bankruptcy or that the company would cease to exist. *Id.* at 861-64. Given that these two ERISA cases (one in this district) have resulted in trial victories for the defendants, Plaintiffs understand that they faced increased risk in bringing this case to a successful conclusion.[9]

### d. Measured Against the Significant Risks, the Settlement Consideration Is Reasonable

The Settlement provides an immediate $1.8 million in cash. In addition, the Settlement provides certain non-monetary benefits (including continued access to educational resources for 5 years; full freedom to diversify Aon Stock for 5 years; greatly enhanced disclosures with respect to Aon Stock in the Plan; and the continuation of an independent fiduciary to monitor Aon stock in the Plan for 5 years). Finally, Defendants have agreed to pay all costs associated with Notice and the administration of the Settlement Fund. *See* Levitt Decl. ¶¶ 39-43.

Class Counsel submit that this is a fair result in a case with extraordinary risks, and is preferable to no recovery at all after an expensive and protracted trial and appeal are completed (or a small recovery even if liability were established). *See, e.g., Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.),* 494 F.2d 799, 802 (3d Cir. 1974) (given likelihood that plaintiffs would receive nothing if case went to trial, no abuse of discretion in approval of settlement for

---

[9]  Even if successful at trial, Defendants would continue to mount a zealous defense to the Class' claims for relief through post-trial motions and appeals. Success by Plaintiffs on appeal would hardly be a guarantee. Many complex cases have been lost on appeal even after a highly successful trial. *See*, *e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning an $81 million jury verdict for the plaintiff class on loss causation grounds and dismissing the entire litigation).

small percentage of plaintiffs' asserted loss); *Hiram Walker & Sons, Inc.*, 768 F.2d at 891 (settlement approved because "[t]here [was] no showing that the amounts received by the beneficiaries were totally inadequate"); *Desert Orchid Partners L.L.C. v. Transaction Sys. Architects, Inc.*, No. 02-553, 2007 U.S. Dist. LEXIS 15547, at *6 (D. Neb. Mar. 2, 2007) (settlement of securities class action approved where "significant factual and legal issues with respect to causation and the nature and amount of plaintiffs' recoverable damages" remained and the result was "far from certain"); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, MDL 1559, Master Case No. 4:03-md-01559, 2004 U.S. Dist. LEXIS 23342, at *31 (W.D. Mo. April 20, 2004) (holding that uncertainty of timing of recovery – or the possibility of any recovery at all – strongly militated in favor of settlement); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("In short, the legal and factual complexities and uncertainties of proving the ERISA damages case also militate in favor of settlement.").

### 2. The Complexity, Expense, and Likely Duration of This Litigation All Weigh In Favor of Settlement

If this litigation were to continue, it would involve numerous complex legal and factual issues, including which, if any, of the Defendants owed a fiduciary duty to the members of the Class; whether any of the Defendants breached those duties; whether the fiduciaries had reason to know that Aon Stock was too risky to be offered or allowed as an investment option in the Plan; and whether and what extent the Plan has sustained damages as a result of Defendants' imprudence.

Defendants would file a motion for summary judgment, and Plaintiffs' response to such motion would necessitate considerable time and effort.  Assuming the claims survive a summary judgment motion, Plaintiffs would have amassed many additional hours of work at great expense for trial preparation.  On liability alone, a trial would have involved substantial attorney and

expert time, voluminous documentary and deposition evidence, vigorously contested motions, and the considerable use of judicial resources. Moreover, given the unsettled state of ERISA law, Defendants would have certainly appealed any adverse result. The necessary delay through a trial, post-trial motions, and the appellate process would likely deny the Class any recovery for years, an unfavorable result for all parties.

This factor therefore supports approval of the proposed Settlement. *See, e.g.*, *In re Computron Software Inc., Sec. Litig.*, 6 F. Supp. 2d 313, 317 (D.N.J. 1998) ("Avoiding this unnecessary and unwarranted expenditure of resources and time benefit[s] all parties."); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 859 (E.D. Mo. 2005) ("where further litigation would have been complex, expensive and time-consuming," settlement is "clearly favored"), *In re IKON Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 105-06 (E.D. Pa. 2002) (complexity, expense, risks, and duration of litigation of breach of fiduciary duty claims weighed heavily in favor of settlement).

### 3. The Lack of Objections Further Supports the Proposed Settlement

As required by the Settlement Agreement and the Court's Preliminary Approval Order, a detailed Class Notice was mailed to more than 60,000 members of the Class at their last known addresses, and a Summary Notice was published in the *USA Today* on July 29, 2010. *See* Levitt Decl. ¶ 49. The Notice advised Class members of the proposed Settlement and advised Class members of their right to object. No member of the Class has filed an objection to the Settlement, which weighs in favor of its approval. *See, e.g.*, *Sutton v. Bernard*, 446 F. Supp. 2d 814, 816 (N.D. Ill. 2006) ("No class member has objected to the settlement, and we believe it is in the best interest of the class that it be approved."), *vacated and remanded on other grounds*, 504 F.3d 688 (7th Cir. 2007); *Williamson v. United Air Lines, Inc.*, No. 1:03-cv-014546, 2009 U.S. Dist. LEXIS 87079, at *5 (S.D. Ind. Sept. 22, 2009) ("[T]he lack of negative reaction to the

16

Settlement by the Class Members, including the absence of any proper and/or meritorious objections, supports approval of the Settlement…"); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304 (2d Cir. 1990) (large amount of opposition from class members may not indicate settlement should not be approved).

### 4. The Opinion of Competent Counsel Weighs In Favor of Approving the Settlement

Significant weight is placed on the endorsement of a settlement by plaintiff's counsel. *See, e.g., Meyenburg v. Exxon Mobil Corp.*, Case No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 97057, at *18 (S.D. Ill. June 5, 2006) (citing *Isby*, 75 F.3d at 1200); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000)). As the Court held in *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, Case No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397, at *7 (N.D. Ill. Dec. 6, 2001):

> Plaintiff's counsel are 'experienced and skilled practitioners in the securities litigation field, and are responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted.' … Thus, Plaintiff's counsel are competent. Therefore, their opinion that the settlement is fair, reasonable and adequate also favors approval of the settlement.

This is especially true when, as here, Class Counsel and the Court are fully capable of evaluating the merits of Plaintiffs' case and the probable course of future litigation.

This factor therefore also strongly supports approval of the Settlement.

### 5. Settlement at This Stage of the Proceedings Is In the Best Interest of the Settlement Class

The stage of the proceedings, including the amount of discovery completed, is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *See Isby*, 75 F.3d at 1199; *In re GMC Pick-up Turck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

17

The proposed Settlement was achieved at the end of the formal discovery process, after all factual and legal analysis was essentially complete and Class Counsel was fully apprised of the strengths and weaknesses of the case.  Plaintiffs' counsel conducted an intensive investigation, including the review of Plan documents and over two million documents produced by Defendants and third parties, numerous depositions and expert analysis on liability and damages.  *See* Levitt Decl. ¶¶ 20-35.  As a result, there is no question that Plaintiffs and Class Counsel were in an excellent position to evaluate the strengths and weaknesses of their allegations against Defendants and the substantial risks of continued litigation, and to conclude that the proposed Settlement is in the best interest of the Class.

This factor therefore also strongly supports approval of the proposed Settlement.

## V.     THE PLAN OF ALLOCATION IS <br> REASONABLE AND SHOULD BE APPROVED

Review of the Plan of Allocation falls within this Court's broad supervisory power over a settlement.  *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D. N.Y. 1997) ("The review of the plan of allocation is squarely within the discretion of the district court.").  In assessing a plan of allocation, "[t]he same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation."  *Retsky Family Ltd. P'ship*, 2001 U.S. Dist. LEXIS 20397, at *9.

In determining the fairness, reasonableness and adequacy of a proposed plan of allocation, courts give great weight to the opinion of qualified counsel.  *See PaineWebber*, 171 F.R.D. at 126, 133.  As such, an allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.  *In re Charter Comms., Inc. Sec. Litig.*, No. 02-cv-1186, 2005 U.S. Dist. LEXIS 14772, at *34 (E.D. Mo. June 30 2005); *see also White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (same); *In re*

*NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023, 94-3996, 2000 U.S. Dist. LEXIS 304, at *5 (S.D.N.Y. Jan. 12, 2000) (same).

Here, the Plan of Allocation provides for a *pro rata* distribution of the Settlement Fund among Class members who held Aon Stock from May 5, 2003 to October 19, 2004, relative their losses on those Aon Stock holdings. *See* Levitt Decl. ¶¶ 44-45.[10] The distribution will be made in accordance with the Summary of Distribution of the Net Proceeds of the Settlement Fund, attached as Exhibit 2 to the Levitt Declaration. This proposed Plan of Allocation is fair and reasonable and should be approved by the Court.

The Plan of Allocation was clearly set forth in the Notice mailed to Class Members, and no member has objected thereto.

## VI.    CONCLUSION

The proposed Settlement is a fair and reasonable result, given the advanced state of the litigation, the presence of skilled counsel for all parties, the arm's-length settlement negotiations, the considerable risk, expense, and delay if the litigation were to continue, and the substantial, certain, and immediate benefit of the Settlement to members of the Class. In addition, the Plan of Allocation is fair, reasonable, and adequate. The Settlement and Plan of Allocation should be approved.

---

[10]   After extensive factual and legal analysis and expert discovery it was determined that a case could not reasonably be made that Defendants violated legal duty prior to May 5, 2003. *See* Levitt Decl. ¶ 46. Therefore, those in the Class who did not hold Aon Stock in the Plan prior to May 5, 2003, will not receive a monetary distribution under the Plan of Allocation. The differentiation of class members based on the merits of their claims is appropriate in a reasonable plan of allocation. *See, e.g., In re Global Crossing*, 225 F.R.D. at 462 (noting that a plan of allocation can take into account "the relative strength and values of different categories of claims").

Dated:  September  3, 2010

Respectfully submitted,

**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLC**

    /s/  Adam J. Levitt
Adam J. Levitt
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
(312) 984-0000 (t)
(312) 984-0001 (f)

Michael Jaffe
Scott J. Farrell
**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
(212) 545-4600 (t)
(212) 545-4563 (f)

***Plaintiffs' Class Counsel***